Thank you again, Your Honors. Thank you. Good morning, Your Honors. Good morning, Mr. Perry. May it please the Court. Anthony Brown on behalf of Plaintiffs and Appellants. Your Honors, I'd like to reserve two minutes of my time for rebuttal. Very well. How much do you want to try to help you? How much do you want to try to reserve? Two minutes, please. Two minutes, okay. Very well. Thank you, Your Honor. You may proceed. Your Honors, the plaintiffs in this case have pleaded 10b-5 claims in breach of fiduciary duty claims in the alternative. And Edward Jones' argument is essentially the plaintiffs are trying to have it both ways. But in fact, Edward Jones is trying to have it both ways. And they tried to do it below, and they were successful, and they're trying to do the same thing on appeal. Let me try to explain. In order to defeat the 10b-5 claims below, Edward Jones incorporated the agreements and the brochures into the complaint by reference. And then they used them to defeat the 10b-5 claims. Essentially, they said, and the district court agreed, look, if we disclosed that there were fees being charged in this account, and we disclosed what the nature of the fees were, then you can't claim that there was fraud in connection with getting the clients into the account. Fine. But when Edward Jones incorporated the documents by reference into the complaint, they transformed the case by transforming the complaint. What happened was they essentially crystallized the gravamen of the breach of fiduciary duty claims by doing so. The key document here, Your Honors, is the advisory solutions agreement. That can be found in excerpts of Record 131, and there's another example at the supplemental excerpts of Record 116. Can I ask you this? Why is the alleged lack of suitability analysis not an omission in and of itself? That lack of analysis means that EJ did not dispose certain facts about the impact of a fee-based account on plaintiff's financial well-being. Why isn't it? So it's not for the reason that I'm about to get to. And so essentially what happened was the court said, you know, and the defendant said below, look, you know, any potential omission that was there was in the disclosures. If you look at the brochures that we handed out, that gave you all the information that you needed. That's how they defeated the 10B-5 claim. But what the court didn't focus on below, and I'm hoping that you will focus on here, is that this advisory solutions agreement actually says something that prevents them from making the same argument. So the advisory solutions agreement on ER-131 and SER-116 has a section called initial funding. And in it, it says, in making the decision to transfer the money to the fee-based account, the client is, quote, not relying on the advice or recommendation of Edward Jones. So what I said before was that crystallized the case. But to perhaps Judge Smith's point, it didn't say, and by the way, we're not conducting a suitability analysis. I mean, your claim here is, in part, they breached their fiduciary duty by serially not conducting a suitability analysis, right? That's correct. And they didn't disclose that they weren't, right? That's correct. So how is that not an omission that's material? I understand that's half your argument on appeal. How is that not a material omission? Here's why. Because I think we need to be careful about what the standard is that applies. As Northstar says, the question is, will this supposed misrepresentation necessarily be part of the proof in support of the state law claims? Let me say that again. Will this misrepresentation necessarily be part of the proofs of the state law claims? Now that we have that incorporated by reference, that language into the complaint, we know that it won't be part of the state law claims. What will a trial look like on the breach of fiduciary duty claims that are now crystallized in the complaint? It'll be a question of, first, whether or not Edward Jones had a duty to do more than provide these disclosures. And then second, did they fulfill that duty? And essentially what we have is a question here, because FINSA Rule 2111 says, look, you're not allowed as a financial advisor to give your clients an option to go into a fee-based account or do anything else without conducting a suitability analysis first. And essentially the situation here is of a financial advisor who's told, hey, you've got a client waiting out there at the table who wants to talk to you about potential accounts. And the financial advisor, on the way out, runs past the board of brochures, grabs a handful of brochures randomly, and scatters them out in front of the client and says, here, you decide. And I'm going to force you in any agreement that you enter into to disclaim that you relied on my advice. It's your burden to choose. Edward? I'm finding it difficult for you to rely entirely on that. In this case, were the fees collected in the fee-based accounts material to your client's decision to purchase or sell securities? No, Your Honor, they weren't. So we're going to skip ahead, I guess, to the second argument that we're making. They were material to whether or not a client would choose one account versus another account, but as to whether the client would invest or buy a security or not buy a security, they had nothing to do with that. Is there any evidence or any allegations that suggest that the fees would have affected any of those decisions? Well, the allegation is that the fee would have affected the decision whether or not to enter into the account itself. The claim is that the clients never should have been presented with the option of entering into these kind of accounts. But I think you focus on an important issue because I think that takes us into the realm of Freeman. This case is on all fours with Freeman, and the court may remember that Freeman involved a variable life insurance, and part of the premium was invested in that case. And the plaintiff sued for breach of contract, and what they alleged was that the defendants didn't follow industry standards when they charged something called a cost of insurance and that the cost charged were excessive. And Judge Kaczynski in that case said, well, look, this is not a case about fraud. I know that there are allegations of fraud in the complaint, but it's really a question about what does this cost of insurance mean? And the trial is going to be a dispute about what the contract is saying. Is it saying that the cost of insurance would be excessive if we did it this way, or is it saying that you met industry standards? And the trial in this case will be exactly the same thing. It'll be over the issue of whether there was a breach of whether there was a fiduciary duty and what the scope of the duty was. And what will happen is the plaintiffs in this case will say, Fins of Rule 211 imposes on you a duty not to give us any options other than ones that are suitable to you or suitable for us given our history of investments. And then what's going to happen is exactly what Edward Jones did below. They're going to introduce evidence and say, no, we fulfilled our duty because we gave you all these disclosures. You knew everything that you were supposed to know. And then the jury will be asked, was that enough to fulfill their duties? And no misrepresentations will come in at trial at all. So this case is on all fours with Freeman. And Judge Smith, just to go back to the question about the connection with the fees, whether any misrepresentations here were not in connection with the purchase or sale of a security. We don't even get there unless the court finds that the gravamen of this breach of fiduciary duty claim was a fraud. But let's assume that's the case for now. And so now we're asking whether it was made in connection with the purchase or sale of a security. And I think, again, it's really important that the court hues as close as possibly to the standards established in this circuit for determining that issue. The Supreme Court said that misrepresentation must be material to a decision to buy or sell a security. That's choice. Earlier, they said that it has to coincide with the securities transaction. That's the Zandford case, SEC versus Zandford. And finally, this circuit has said that the relationship between the breach and the securities transactions has to be more than tangential. And the relationship between any security transactions in this case and the breach that's being alleged is at most tangential. And that's because there didn't have to be any transactions occurring. There didn't have to be any trades. There didn't have to be any purchases or sales in order for the breach to take place. In fact, these are clients who don't trade normally. Their history was to buy and hold on to their securities. As I understand it, counsel, your class is a buy and hold class. Correct. And so if there were putative class members who weren't buyers and holders and instead that they were active traders, they wouldn't qualify as being members of the class. Yes, that's correct. So but that's part of the point about why any misrepresentation. We don't think there were misrepresentations that are material to the gravamen of the breach of fiduciary duty claims. But even if there were, they didn't meet the standards for a connection with the purchase or sale of a security, as the Supreme Court in this court has outlined those standards. And I'm not sure if the court has any other questions for me on these points. Now, the main issue here, I think, is that the court needs to focus on the way that as Edward Jones litigated the matter below, it ended up actually crystallizing what is essentially going to be on trial if these breach of fiduciary duty claims go forward. And as I described it, the case will essentially be the plaintiffs alleging that there was an obligation before even presenting an option about the fee-based account to do some sort of determination about it. They didn't. They offered that as a possibility. And the clients entered into the fee-based account. That was the breach. Edward Jones will undoubtedly come back and enter evidence saying, well, we disclosed everything that was there. And as they did below. And that argument is an argument about whether there's a duty and what the scope of the duty is. It's not an argument about material fraudulent omissions. Absolutely. Let me just ask you that. Let's just say argue. I know that you're correct. Basically, the very signing up of the account, if you will, constitutes the breach because there was an omission to dispose that this was not good for them. And you're mine. How do you measure any damages out of that? How would you know if there's no security trade? There's no money taken out. What damages are suffering? If you're. Oh, no, that's that's not. Yeah. No, that's not correct, Your Honor. So the damages don't result necessarily from the security trades. And they result from the fact that a fee is being taken out from whatever amount of money is. And that's what I understood you to say. And perhaps that's my misunderstanding. I thought you were saying that it is the very offering. Of these fee based accounts that constitutes a breach of a duty has nothing to do with trading, has nothing to do with fees charged. It's just offering these accounts. That's the breach of the duty. Did I misunderstand you? No, that's the breach. That's correct. So then what are the damages? The damages are based on your allegation, as I understand it. This breach occurs immediately. No fees are out. Nothing's been done. Nothing's been charged. Nothing's been bought. Nothing's been sold. You offered it. You breached the duty. OK, so what what are the damages there? The damages are the fees that are taken out of the account. OK, we're not communicating. The balance of your time and we'll talk about this on rebuttal. How would that be? Thank you, Your Honor. OK, very well. Mr. Perry. Thank you, Your Honor. May it please the court. Judge Smith, you asked my friend whether the fee based accounts are material to the investment decision. Mr. Brown said no. This is why we have complaints. Paragraph 162 of the complaint. And I quote the commission based fee based dichotomy is critical and material to any investment decision, including lead plaintiffs investment decision to transfer from commission based accounts into fee based accounts. That is an allegation in this case. To be sure, it is in the 10B5 section of the complaint, but it is a factual averment by the lead plaintiffs, by Mr. Brown's clients about what was material to them in this transaction. It goes on in paragraph 168 to testify or to allege, excuse me, and this goes to Judge Bennett and Judge Smith to both of your questions about omissions. If defendants had disclosed to lead plaintiffs that Edward Jones was not conducting a suitability analysis, lead plaintiffs would have looked elsewhere for investment advisory services. That is an allegation. Counsel, to borrow a phrase from Judge Smith, let's say we were to hypothetically agree with you that there was an omission. I'm having a lot of trouble understanding how this is in connection with the purchase or sale of a covered security. So I'd appreciate it if you could go there for me. Absolutely, Your Honor. First, if we look at the 10B5 claims, paragraph 174, for example, pleads in so many words that Edward Jones performed this review in connection with trades after transferring the assets. So in other words, in connection with is pleaded in hack verba. But I look at the complaint and they're alleging you took buyers and holders from an account where they would pay based on trades to an account where they would pay based on the asset amount and they don't trade. And so, I mean, irrespective of what their 10B5 allegations are, I'm having a lot of trouble seeing how moving from a transaction based fee to a asset based fee is in connection with the purchase or sale of a security when the whole class is based on were holders. Two, three answers, Judge Bennett. First, on that last point on holders, paragraph 60 defines the class and it doesn't exclude holders. It's everybody who was transferred. Second, paragraph 39 specifically alleges that in moving the client, this is in the fiduciary breach section, not the 10B5 section, in moving the clients from commission based accounts to fee based accounts, Edward Jones did that, quote, through the sale of these assets. The allegation is that the assets were sold, the securities were sold out of the commission accounts and different assets were purchased in the fee accounts. The transfer itself is effectuated by a purchase or sale of covered securities. That satisfies in connection with easily. If that's not enough, my third answer is paragraph 41. I'm sorry. Let me go back. Let me go back to that answer because I want to make sure I understand it. They are alleging in the complaint that as part of the transfer, the assets that were in the complaint were sold and converted into different assets. Correct. Yes, Your Honor. It's paragraph 39. In causing these clients to move from commission based accounts through the sale of their assets to fee based accounts, and it goes on from there. The sale of securities is alleged in the complaint. The reason for that, if you look into the brochures, is that there were different mutual fund options depending on which accounts were chosen. The commission based accounts, of course, you could invest in anything. Some of the fee based accounts were more limited, so there were transactions in place in connection with the transfers, and that's pleaded in the complaint and undisputed, and that satisfies in connection with. Third, a part of the so-called reverse churning claim is that no transactions happened after the transfer. That's not true in the real world, and they know it's not true in the real world, and so they pleaded in paragraph 41, which was added, by the way, in the second amended complaint. After it had already been dismissed on Seleucia Grounds, they added paragraph 41 in the fiduciary breach allegation, which says that these additional trades, which they call phantom trades, were made to give the appearance that Edward Jones was managing the fee based account in a deceptive effort to justify its fees. But those are alleged to have occurred after the initial breach. I mean, their allegation is you breached a fiduciary duty by moving them, and then afterward you did things to sort of cover it up. But I don't see how these phantom trades could sort of nunk-pro-tunk change the initial transfer into a connection with the purchase of sale of a security that occurred later for the purpose of allegedly covering up the initial suitability issue and the initial transfer. So I don't see how it would relate back. Two answers, Judge Bennett. First, the whole notion of a reverse turning claim, which no court, of course, has ever recognized. This was a test case on this new theory that's never been accepted, is that the financial advisor does nothing to justify the fee. For example, that's paragraph 42, placing a client's funds into a fee based account for no reason other than to collect a fee. And there are many allegations that say that part of the reverse turning claim is that Edward Jones did nothing to justify the fee. If there were actual trades, that would justify the fee. That's the purpose of paragraph 41. It's part and parcel of the reverse turning claim. After doesn't make any difference in this context, Your Honor, because the scheme carries on through the transfer. The second answer to your question, Judge Bennett, is also the answer to an earlier question by Judge Smith regarding the damages. The damages are the net fees. There's paragraph 58, the amount of fees they paid, less the commissions they would have played, plus the amount of value of assets. So any trades that took place would have to be netted out of the damages analysis. So it's no answer to say that's after the trades, Judge Bennett. It is part and parcel. I understand your argument that the damages would be net of any legitimate trades that were conducted on behalf of the buyers and holders, but I still don't see how that would convert an initial putatively improper transfer into in connection with a sale of securities if simply because in computing damages, you have to look and see if there were any legitimate later trades. I was unclear. Let me back up and try to fill in the hole in that analysis, my analysis, Judge Bennett. This is not an on-off binary act that is being challenged here. It is a scheme. It says 19 times in the complaint, a reverse churning scheme. The scheme carries through from the alleged provision of advice through the alleged transfers to the later alleged failure to provide services. The scheme covers all of those things. If any of those things are done in connection with the purchase or sale of securities under Zandford and O'Hagan and Trois, the in connection with requirement is satisfied. There is no requirement of securities laws that in connection with be tied to a point in the scheme when as here the plaintiff has alleged scheme liability. And so that's the point I was trying to make is that, you know, there's an art of the plaintiff is trying to draw an artificial distinction to avoid its own allegations regarding pleadings. And remember, here's where the 10b-5 claims remain important to this case. In the 10b-5 case, the plaintiffs had to plead that this scheme was undertaken in connection with the purchase or sale of securities. That was an element of their cause of action. And they came forward in good faith under Rule 11 and pleaded that it was made in connection with the purchase or sale of securities. They didn't prevail, but then SLUSA says because they couldn't prevail under 10b, they don't get to turn around and do it under state law. And that's the whole purpose of this point. There is not a single case from this court. There's not a single case from any appellate court since SLUSA was enacted, and it's been many years now, in which a plaintiff pleaded simultaneously a 10b claim and a state law claim based on the same facts that the state claim wasn't held precluded by SLUSA. I mean, they're asking this court to make a dramatic, unprecedented change to say for the first time ever a 10b claim is gone, but the parallel state claim survives. And the reason for that is that the 10b claim that they pleaded in this complaint has every element of SLUSA. And if we go back to what the Ninth Circuit standards are, I agree with my friend Mr. Brown, we should look at what the Ninth Circuit tells us about how to analyze this. The Fleming case is our clearest poll start. The standard for SLUSA preclusion is whether the factual allegations underlying a state law claim, quote, could have been pursued under Rule 10b-5. That's in Fleming at page 1153. We know that these factual allegations could have been pursued under 10b-5 because they were pursued under 10b-5 in the first complaint, in the second complaint, and in the third complaint. The plaintiff said that the same facts satisfy 10b-5, which then comes to where Mr. Brown started on this notion of alternative pleading. This is not a case about alternative pleading. If you could help me here, I understand what you're saying about, effectively they're bound by their other pleadings, but help me as someone not too conversant with this general area of the law. I have the understanding that SLUSA was essentially designed to address what, as a layman, I would say strike suits, fraud on the market, stock goes down, you omitted something, and in connection with the purchase or sale of security, I got hosed. Why is that not completely different from what's happening here, where what they're saying is, you charged me fees, and yes, eventually we had something to do maybe with sales of securities, but if no sales ever occurred, I would still have been overcharged. Isn't that just a completely different thing? Now, maybe they're doing artful pleading, and you're trying artful defense under SLUSA, but am I missing what SLUSA was really supposed to be about? Your Honor, Judge Boggs, I think I'd answer it this way. SLUSA was designed to channel claims involving securities into federal court under federal law. That's the holding of DABIT and all the other Supreme Court cases. Not every securities claim is going to state a cause of action. That was the whole purpose of the PSLRA, right? The order of legislation here was, first, Congress made it harder to bring federal securities claims. Then plaintiffs tried to do an end run by going under state law. Then Congress enacted SLUSA to say, no, no, no, if you can't do it under federal law, you can't do it at all. This case is actually a perfect example of that. The plaintiffs tried under federal law. They have a theory of reverse churning that, as I said, no court has ever accepted, but they tried it under federal law. It didn't work. So now they're trying it under state law. In effect, in the reply brief, they step right into the SLUSA problem. They say, well, the fact that we couldn't have proved intentional scienter-based violations of Federal Rule 2111, we could still base our state law claim on negligence. Well, that's exactly what SLUSA is designed to prevent, is state laws with lower standards or different requirements based on the same conduct. Counsel, you're clearly not arguing that simply bringing a federal securities claim bars you from also claiming that it's a bringable state law claim as opposed to you still have to meet the requirements of SLUSA. If you bring a frivolous federal claim that clearly doesn't meet the requirements, that's not going to stop you no matter what you pleaded. It may give you some ethical issues, but it's not going to stop you from trying to bring a class action based on a state law claim if your federal allegations based on the same facts clearly don't cut the mustard, right? I think that's right, Judge Bennett, but this is not and never has been a frivolous claim. This was a very serious claim. These plaintiffs put a lot of time and effort into this. There's law review articles that they cite in their brief about this subject. They were trying to make law here. They were trying to get this notion of reverse churning accepted by a court. They failed. It wasn't frivolous. It was wrong, but it wasn't frivolous. And I certainly am saying that where a plaintiff stakes a claim on the federal securities laws that meets all of those requirements, a deceptive or active practice in connection with the purchase or sale of securities, which they plead in so many words in their 10b-5 claim, then they don't get a turnaround and take a second bite at the apple under state law. That is what SLUSA requires. And that in this case, if that's the answer, we win. Then if we take out the 10b claim entirely, and I take Mr. Brown's point, right? Let's just put it to the side. Let's look only at the fiduciary breach claim, and I have to bring the court back to paragraph 41. I mean, if we were analyzing this from scratch on a blank page, the plaintiffs allege, quote, in a deceptive effort to justify its fees, Edward Jones blindly traded assets in plaintiff's account only for the sake of moving them around. Right there, end quote. Right there in that one sentence I just read you from the plaintiff's fiduciary breach allegations, they allege a deceptive act or practice in connection with the purchase or sale of securities.  That one paragraph tubes the complaint. And I'll end on that unless the court has any further questions. Any other questions by my colleagues of Mr. Perry? Okay, thank you, Mr. Perry. Mr. Brown, you have some rebuttal time. Thank you, your honors. Let me start with the Phantom Trades allegation because the Phantom Trades allegation, as we explained in the reply brief, was clearly in anticipation of the argument that Mr. Perry just made, which was that the fees were justified and earned. And the point there was really, I think it's out of place in the complaint. The point there was to anticipate the contract damages argument that was gonna be made. But it also, as Judge Bennett pointed out, it happens at a completely separate time from the actual breach that occurred here, which was at the time that Edward Jones actually extended the option to the clients. And so the Phantom Trades allegation there in paragraph 41, it has no bearing on the issue about whether this breach of fiduciary duty claim necessarily involves proof of misrepresentation. Then, your honor, I do wanna point out something because I think this is relevant to sort of the entire argument about the issue of the connection between the purchase or sale and also whether any suitability analysis actually occurred. If the court takes a look at the questionnaires that the defendants relied on below and introduced into the record, you'll see that the questionnaires don't show that any suitability analysis was conducted. In fact, they're part of the agreement to enter into the account itself. And the questionnaires are not designed to determine the suitability of whether a fee-based account is appropriate for the client. Counsel, I'm reluctant to interrupt your rebuttal, but could you address Mr. Perry's point about, if I'm remembering it correctly, about after the accounts were switched, there were wholesale, you've alleged there were wholesale sales of assets sort of to justify it, if I'm understanding it correctly, but he referred to a paragraph where he says you allege that there were wholesale sales of assets after the switchover, if I'm remembering that correctly. Yeah, I think that this is where I was going, Judge Bennett, and I hope this answers your question. I think the point that's being made there is that the questionnaires that were given to the clients were not part of the suitability analysis at all. The questionnaires were there to determine what was the appropriate investment strategies once they were in the fee-based account. And so there was no suitability done for purposes of determining whether a fee-based account would be suitable, but the question was, once you're in the fee-based account, how should we invest your money?  and separate conduct. The question about, you know, and the whole purpose of the questionnaires is to say, what's your risk level once you're in the fee-based account? And so my point is that to the extent there were sales that took place or purchases that took place, I mean, look, it's a brokerage account, right? So there are going to be some sales and there are going to be some purchases. But the question is, suppose there was a fraud or suppose there was some deceit, was it in connection with the purchase and sale or was it in connection with getting into the fee-based account? So you would say that these allegations of asset-type sales would go in the same bucket as to your allegation of the phantom trades. Correct, Your Honor. That in your view, it didn't have anything to do with the fiduciary duty breach, which was the account switching. And it was not coincident with the breach of fiduciary duty. Well, we're over time here. Let me just ask one other quick question. Mr. Perry has indicated that your plaintiffs are trying to make new law. Is he correct? You know, Your Honor, what we're trying to do is enforce the plaintiff's rights and to- I don't want that kind of language. I want it specifically. Well, look, I need to be candid with the court. There are no cases out there on this concept. And what we're trying to do, and frankly, we thought it was fraud. The district court didn't think it was fraud. Fine. But it's also breach of fiduciary duty. And where Mr. Perry is wrong, respectfully, is that you're allowed to- and this is what the Supreme Court has said. You're allowed to plead in the alternative. Okay. Let me get back to this specifically. If you could, what new law would you make in this case? That not complying with FINSA Rule 2111 is a breach of fiduciary duty. That advisors like Edward Jones should not be able to slide brochures from any possible account across the table to you. They have to research it first. Okay. Do either of my colleagues have additional questions for either of these lawyers? Just on that, on that point, if there were going to be new law made, that would be at some later stage because that's not really before us right now, is it? No, Your Honor. Right now, the only question before the court is whether the plaintiffs should be able to go forward on their claims of breach of fiduciary duty in the district court. Okay. We thank both of you gentlemen for your argument. Very helpful to us. The case just argued is submitted and the court stands adjourned for the day. Thank you, Your Honors. Thank you. This court for this session stands adjourned.
judges: Boggs, M. Smith Jr., Bennett